UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LUCY G. SIKES                                CIVIL ACTION NO. 10-1863

VERSUS                                       JUDGE S. MAURICE HICKS, JR.

PATRICIA ANN CRAGER                          MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is an appeal, pursuant to 28 U.S.C.§158(a) and 28 U.S.C. §1334(b), filed by Lucy G. Sikes ("Sikes"), the Standing Chapter 13 Trustee, from a final order of the United States Bankruptcy Court for the Western District of Louisiana. The order, filed on November 3, 2010, overruled Sikes objection to the confirmation of Patricia Ann Crager's (Crager) Chapter 13 plan. (See Record Document 1) Sikes timely appealed the order.

Based on the reasons set forth below, the bankruptcy court's order of November 3, 2010, which overruled the Trustee's objections and confirmed the bankruptcy plan of the debtor, Crager, is **REVERSED.** Accordingly, this matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this Memorandum Ruling.

**I. BACKGROUND**

**A. Case Background.**

On July 22, 2010, the debtor, Crager, filed a voluntarily petition for relief under Chapter 13 and a proposed Chapter 13 plan. (Record Document 3-1, 4) Crager's only source of income is from Social Security in the amount of $1,060 per month and $16 per month in food stamps. (Record Document 3-3) Other than her home, Crager owed no other

secured debt. Her bankruptcy schedule listed four unsecured debt obligations totaling $7,855.27 in which she paid approximately $200 per month. (Record Document 3-1, Transcript page 13, 21) The proposed bankruptcy plan required Crager to pay to the Trustee $85.00 per month for 36 months and to also continue to pay her monthly mortgage note of approximately $327.10. The money collected during the first 35 months of this plan would go mostly towards payment of Crager's attorney fees and a little towards administrative fees. In month 36, the final month of the plan, $76.00 would be distributed to Crager's unsecured creditors. (Record Document 1-3, 3-5) Because Crager filed for Chapter 13 relief, her attorney received the standard "no look" fee of $2,800.00.[1] (Record Documents 1-3 and 3-5) On September 21, 2010, Sikes filed an objection to confirmation of the plan on the grounds that the proposed Chapter 13 petition and plan were not filed in good faith pursuant to 11 U.S.C. §§1325(a)(3) & (7) and that the amount of fees sought by Crager's attorney were unreasonable. (Record Document 3-15.) Crager filed responses to Sikes' objection. (Record Document 3-16) A hearing was then held on the objections on November 3, 2010. On that same day, the bankruptcy court overruled Sikes' objection and confirmed Crager's Chapter 13 plan. (Record Document 3-21) Sikes timely appealed the bankruptcy court's order. (Record Document 1) A Motion to Supplement Authorities was filed by Sikes on July 29, 2011. (Record Document 30) This appeal is now properly before this Court.

**B. Issues on Appeal.**

The Trustee first argues that the bankruptcy court erred as a matter of law in finding

---

[1] The Court notes that the "no-look" fee in this case is 36 percent of the debtor's total unsecured debt which seems excessive.

that the Chapter 13 petition and plan were filed in good faith. The Trustee asserts that Crager's Chapter 13 plan failed to propose any meaningful payments to Crager's creditors other than the payment of her attorney fees resulting in an abuse of the spirit and purpose of the Chapter 13 Bankruptcy Code. The Trustee argues that this Chapter 13 Plan is simply a Chapter 7 in disguise.

Second, the Trustee argues that the bankruptcy court erred in shifting the burden of proving the reasonableness of the attorney fee award from Crager's attorney to the Trustee after a challenge by the Trustee of the "presumptively reasonable fee" of $2800.[2]

## II. LAW AND ANALYSIS

### A. Jurisdiction and Standard of Review.

This Court has jurisdiction over Sikes' appeal from the bankruptcy court's order pursuant to 28 U.S. C. §158(a). In reviewing a decision of the bankruptcy court, this Court functions as an appellate court and applies the standards of review generally applied in a federal court of appeals. See Matter of Webb, 954 F.2d 1102, 1103-04 (5th Cir. 1992). The court may make its own *de novo* determination regarding questions of law. See Borg-Warner Acceptance Corp. V. Fedders Financial Corp., 614 F.2d 399, 403 (5th Cir. 1980). Findings of fact are not to be set aside unless clearly erroneous. See Matter of Herby's Foods, Inc., 2 F.3d 128, 130-131 (5th Cir. 1993) A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire record is left with definite and firm conviction that a mistake has been committed." See United States v.

---

[2] This is not the average case for which a "no look" fee can be used. It is not an entitlement fee authorized in the Western District. This case is extraordinarily simple and should not command a full look fee.

United States Gypsum Company, 333 U.S. 364, 395 (1948).

**B.      Good Faith, Section 1325(a)(3).**

This Court will first consider the issue of good faith. Section 1325(a)(3) of the Bankruptcy Code states that the "court shall confirm a plan if ... the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. §1325(a)(3). The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtors misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws. Matter of Elmwood Dev.Co. v. Gen. Elec. Pension Trust, 964 F.2d 508, 510 (5th Cir. 1992). In proceedings to confirm a plan, the debtor has the burden of proving good faith. In Re Caldwell, 895 F.2d 1123, 1126 (6th Cir. 1990). In proceedings to convert or dismiss for lack of good faith, the creditor has the burden of showing that the debtor lacks good faith. In re Love, 957 F.2d 1350, 1355-56 (7th Circuit 1992).

"Good faith" is not defined in the Bankruptcy Code. When deciding whether a Chapter 13 plan was filed in good faith, bankruptcy courts also apply a "totality of the circumstances" test. Matter of Chaffin, 836 F. 2d 215 (5th Cir. 1987); Suggs v. Stanley (In re Stanley), 224 Fed. Appx. 343, 346 (5th Cir. La. 2007). In Stanley, the court listed the following factors to determine good faith:

> 1. the reasonableness of the proposed plan,
> 2. whether the plan shows an attempt to abuse the spirit of the bankruptcy code,
> 3. whether the debtor genuinely intends to effectuate the plan,
> 4. whether there is any evidence of misrepresentation,
> 5. whether the filing of the case was part of an scheme of fraud with an intent not to pay,
> 6. whether the plan reflects the debtor's ability to pay, and

       7.     whether a creditor has objected to the plan.

See Id. "In applying this test, the bankruptcy court 'exacts an examination of all the facts in order to determine the bona fides of the debtor.'" See id. In ascertaining if "a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case." Elmwood, 964 F.2d at 510. The court can determine that a Chapter 13 is not filed in "good faith" without having to find that the debtor is acting in "bad faith." In re Guastella, 341 B.R. 908, 920 (9th Cir. BAP 2006).

     If the bankruptcy court determines that a Chapter 13 plan has not been filed in good faith, it may deny confirmation. 11 U.S.C. §1325(a)(3). At the request of an interested party, the court may convert a Chapter 13 case not filed in good faith to one under Chapter 7 or dismiss the case in its entirety, "whichever is in the best interests of creditors and the estate." 11 U.S.C. §1307(c)(5); Stanley, 224 Fed. Appx. at 347.

## C. Bankruptcy Court's Hearing

     A hearing was held in the bankruptcy court on November 3, 2011, regarding the Trustee's objections to the confirmation of the plan. The court heard the testimony of lawyers from both sides and also the debtor, Crager. The bankruptcy court considered the testimony of the debtor, Crager, who was concerned that paying her credit cards, house note and other expenses left her little money to save in case she needed to make repairs on her aging house. (Transcript page 20) Crager stated she considered the fact that making only the minimum payments on her credit cards would take a long time to pay off the credit cards. (Transcript page 20) Crager noted she had contacted the credit card companies in the hopes of reducing her rates but the companies would not do so.

(Transcript page 45) The bankruptcy court determined that Crager had been explained the Chapter 7 and Chapter 13 options by her attorney as to which bankruptcy was best and that the she weighed her options finding that Chapter 13 was a better choice for her. (Transcript page 21) Crager stated she was unable to pay the up-front court costs and legal fees for a Chapter 7 but could pay monthly payments for a Chapter 13. (Transcript page 22) Crager also stated that she was unable to save money to file for a Chapter 7 and that she recognized that she could not file another Chapter 7 bankruptcy for many years after this one. (Transcript page 26-28) Crager considered too the fact that a Chapter 7 would impair her credit rating more than a Chapter 13 would. (Transcript page 29) Crager noted, when asked, that she would have filed a Chapter 7 had she had the money to pay up-front but she did not and she did not feel she could save to afford the fees. (Transcript 34-35) Ultimately, the bankruptcy court overruled the Trustee's objection and confirmed the plan.

**D. Analysis.**

The Trustee objects to Crager's plan contending that 35 of the 36 months of the debtor's repayment go towards paying her attorney and not to repay her creditors and only in the 36th month would creditors receive anything. The Trustee argues that this plan results in the "unfair manipulation of the bankruptcy code." The Trustee contends that while this type of case may "technically be in compliance with the provisions of the bankruptcy code, such cases are not filed in 'good faith' because they not only contravene the intent of Congress, but also create a conflict between debtor attorneys and their clients."

The Trustee supplements the record with two additional cases, In Re Arlen, No 10-21980-DRD-13, 2011 Bankr. LEXIS 1638 (Bankr. W.D. Mo. May 3, 2011) and In Re Puffer,

2011 U.S. Dist. LEXIS 73602 (D. Mass. 2011). Both of these cases appear to be similar in facts with the current case. The court in <u>Arlen</u> joined many other courts across the country in finding that attorney fee-only plans are inconsistent with the spirit and purpose of Chapter 13 as well as an abuse of the Bankruptcy Code.  See <u>In re Coleman</u>, 5 Bankr. 182, 6 B.C.D. 795 (Bankr. W.D. Kentucky 1980). The court in <u>Arlen</u> considered the totality of the circumstances but noted that other cases consider that the key inquiry is "whether a plan violates the spirit and purpose of Chapter 13" contending that the purpose of Chapter 13 is to "'adjust their debts,' reorganizing their financial affairs while serving debts out of future income pursuant to a plan" citing <u>In Re Paley</u>, 390 B.R. 53, 58 (Bankr. N.D.N.Y. 2008). <u>Arlen</u> at 7. The court concluded in this case that not only did it appear attorney fee-only plans failed to meet any known goals of Chapter 13 but such plans did not appear to benefit anyone other than counsel. <u>Arlen</u> at 11-13.  In <u>Puffer</u>, an attorney fee only Chapter 13 plan was filed because the debtor could not afford a Chapter 7 and needed relief from creditors. <u>Puffer</u> at 7-8.  The Court found the debtor could have saved money and waited to file a Chapter 7 case instead of filing a Chapter 13.  The Court concluded that, "the bankruptcy court did not err in following the substantial weight of case law adopting the bright-line rule that attorney fee-only cases, including this one, fail to satisfy the statutory good faith requirement." <u>Puffer</u> at 19. While these cases are persuasive, this Court notes that neither of these cases are binding on this court.

      There are two types of cases for debtors such as Crager. Chapter 7 is a "liquidation" bankruptcy in which the debtor's nonexempt assets are converted to cash and distributed to creditors. A discharge for a debtor in a Chapter 7 occurs approximately four months from the filing of the petition. Chapter 13, which was filed in this case, allows debtors to

reorganize and adjust their debts without having to liquidate their assets. The time period for discharging a Chapter 13 debt is longer taking between 36 months to 60 months.

Upon de novo review of the bankruptcy court's rulings of law, this Court finds that Crager's Chapter 13 plan, which directs approximately 97 percent of the payments to go to her attorney and the administrative fees and a paltry 3 percent or so to her creditors, is inconsistent with the spirit and purpose of Chapter 13 and is therefore not filed in good faith.[3] At the time Crager filed her case, she was essentially judgment proof with no assets that could be seized and very low income. She was current on her credit card obligations and not in arrears. A review of her testimony indicates she was a very conscientious person who has always taken care of her obligations even though it has been difficult. Crager sought help through bankruptcy to find ways to pay her financial and future obligations as she had handled in the past but all she received was not payment on her obligations but simply payment for her attorney. See also, In re Diano, No. 01-85932-CRM, slip op., at 3-4 (Bankr. N.D. Ga. Dec. 17, 2001) which stated,

> "If the court were to allow the use of Chapter 13 for the sole purpose of ensuring payment of attorney fees, it would serve as an incentive for attorneys to counsel clients to unnecessarily file cases under Chapter 13 instead of Chapter 7. Such filings have the inherent effect of placing the interests of the attorney above those of his client, the Court and the bankruptcy system as a whole ... Allowing attorneys to utilize Chapter 13 sole purpose of ensuring payment of fees runs afoul of these manifest purposes [of Chapter 13]."

As noted in the supplement filed by the Trustee, many courts across the country have held that plans which propose little or no payments to creditors and satisfy only the payment of administrative and attorney fees are inconsistent with the purpose and spirit of

---

[3] The bankruptcy system does not exist as a system "of the lawyers, by the lawyers, for the lawyers."

Chapter 13 and are not filed in good faith. See also In re Montry, 393 B.R. 695 (Bankr. W.D. Mo. 2008); In re Paley, 390 B.R, 53, 58 (Bankr. N.D.N.Y. 2008). As the Arlen court noted, "Congress did not create Chapter 13 as a vehicle solely for the payment of attorney fees." Arlen at 10.; In Re Lelmert, 2009 Bankr. LEXIS 1416, 2009 WL 1163401 (Bankr.E.D.Mich.) The Trustee in her Reply Brief coins a phrase infamously used by the Supreme Court in 1964, "I know it when I see it" when reviewing "good faith" issues. Clearly this phrase is applicable here. One must take pause when finding that the debtor's sincere hopes to pay her creditors after paying them herself for years with no arrears is dashed by having almost all her repayment go to her attorney and not the creditors. Yes, she is continuing to pay her mortgage but her unsecured debt of over $7,000 will never be paid. A more conscionable plan (i.e. good faith plan) would be to truly pay the creditors for most of the 36 months instead of paying just attorney and administrative fees. The creditors here are the losing parties virtually to the exclusion of payments of the attorney who is the only one profiting. Clearly the true intent of Chapter 13 was not to simply administer the payment of attorney fees. Accordingly, the bankruptcy court's order of November 3, 2010, confirming Crager's Chapter 13 plan, is **REVERSED** and **REMANDED** to the bankruptcy court for further proceedings, specifically on the issue of good faith, consistent with this memorandum ruling. The Court need not reach the issue of the shifting of the burden of proving the reasonableness of the attorney fee award due to this Court's holding on the other issue.

## CONCLUSION

For the reasons stated above, the bankruptcy court's Order of November 3,

2010, which overruled the Trustee's objections and confirmed the bankruptcy plan of the debtor, Crager, is **REVERSED.** Accordingly, this matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this Memorandum Ruling.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 30th day of September, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE